**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DON R. SPECIALE,<br><br>   Plaintiff,<br><br> v.<br><br>NANCY A. BERRYHILL,<br><br>   Defendant. | Case No. 16-cv-01659-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND REMANDING TO THE AGENCY**<br><br>[Re: ECF 11, 16] |

Plaintiff Don R. Speciale appeals a final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his application for a period of disability and disability benefits under Title II and Title XVI of the Social Security Act. Upon consideration of the briefing[1] and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment, GRANTS IN PART AND DENIES IN PART Defendant's cross motion for summary judgment, and Remands the case to the Agency for further proceedings

**I. BACKGROUND**

Speciale, a U.S. citizen, was born on August 8, 1951. Admin R. ("AR") 11, 27, 115. Speciale has a high school degree and completed one year of college. AR 40, 146. Over the past 15 years, Speciale has worked in the construction industry. AR 146. From March 1994 through June 2003, he worked as a Regional Manager. *Id.* From December 2005 through July 2008, Speciale worked as a Construction Manager. *Id*. Most recently, Speciale worked as a Regional Construction Manager, from July 2008 through November 2009. *Id.* Speciale claims that he

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

worked at least 10 hours per day, 6 days a week in each of these positions. *Id.*

On September 18, 2012, Speciale filed an application for a period of disability and disability insurance benefits, alleging disability beginning November 13, 2009. AR 11. Speciale also filed an application for supplemental social security income on September 18, 2012, alleging the same disability start date. *Id.* Speciale claims disability due to back pain and depression. *Id.*

Speciale was denied benefits initially and upon reconsideration. AR 11. He requested and received a hearing before an administrative law judge ("ALJ") on June 16, 2014. *Id.* at 11, 74. Speciale appeared and testified at the hearing. *Id.* at 11. An impartial vocational expert ("VE"), Victoria Rei, also testified at the hearing. *Id.* On September 22, 2014, ALJ Brenton L. Rogozen issued a written decision finding Speciale not disabled and thus not entitled to benefits. *Id.* at 11–18. The ALJ's decision was affirmed by the Appeals Counsel on March 1, 2016, making the ALJ's decision the final decision of the Commissioner of Social Security. *Id.* at 1–6. Speciale now seeks judicial review of the denial of benefits.

## II. LEGAL STANDARD

### A. Standard of Review

District courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r Soc. Sec.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r Soc. Sec.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the

evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

The ALJ determined that Speciale had acquired sufficient quarters of coverage to remain insured through December 31, 2014. AR 13. At step one, the ALJ determined that Speciale had

3

not engaged in substantial gainful activity since his alleged onset date of November 13, 2009. *Id.* At step two, the ALJ found that Speciale had one severe impairment, "degenerative disc disease." *Id.* The ALJ stated that although the records showed treatment for various other physical conditions, including hepatitis and a sleep-related breathing disorder, those conditions had not resulted in significant limitations and were therefore non-severe. *Id.* The ALJ also concluded that Speciale's medically determinable mental impairment of depression "does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore non-severe." *Id.* at 14.

At step three, the ALJ concluded that Speciale did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 15. Between steps three and four, the ALJ found that Speciale had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). AR 15. At step four, the ALJ found that Speciale was capable of performing past relevant work ("PRW") as a project manager, and that this work does not require the performance of work-related activities precluded by his RFC. *Id.* at 18. Thus, the ALJ determined that Speciale had not been under a disability, as defined in the Social Security Act, from November 13, 2009, through the date of the decision. *Id.* at18.

Speciale challenges the ALJ's step two and step four determinations, asserting that the ALJ erred by misclassifying his PRW, failing to provide sufficient basis for rejecting the finding and opinions of his treating physicians, failing to properly consider the demonstrated diagnoses of depressive disorder and medication side effects, and failing to consider and assign sufficient weight to the Department of Veterans Affairs' ("VA") disability rating. The Court addresses each alleged deficiency in turn.

**A.  Classification of Past Relevant Work**

In his opinion, the ALJ found that Speciale is capable of performing his past relevant work as a project manager, which does not require the performance of work-related activities precluded by his RFC. AR 18. Relying on a report by VE Tom Linville, Speciale contends that the

4

testifying VE, and thus the ALJ, misclassified his PRW. Pl.'s Mot. Summ. J. ("Pl.'s MSJ") 8, ECF 11; Reply ISO Pl.'s MSJ 3, ECF 19. Speciale also asserts that in denying his application at step four, the ALJ classified his PRW based on the least demanding function of his PRW—*i.e.*, duties he performed only 40 percent or less of his typical workday—in violation of *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985), and its progeny, including *Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016). Pl.'s MSJ 9–10. Defendant disputes this contention, and argues that the ALJ properly relied on hearing testimony and the VE's testimony to find the project manager position was past relevant work. Defendant also argues that the ALJ did not base his determination on the least demanding function. Def.'s Mot. Summ. J. ("Def.'s MSJ") 6, 8, ECF 16.

### i. Misclassification

Speciale first contends that the ALJ misclassified his PRW, which led to an erroneous denial at step four. Pl.'s MSJ 8. To show that his PRW was misclassified, Speciale relies on VE Tom Linville, whom Speciale hired after the ALJ rendered his opinion. *Id.* at 8; Reply ISO Pl.'s MSJ 4. In his report, Linville claimed that the ALJ erred in relying on the testifying VE because the two DOT job categories described by the testifying VE did not match the job that Speciale actually performed. AR 226–28. Considering the materials, products, subject matter, and services ("MPSMS") codes connected with the project manager role, Linville asserts that the project manager title is "ill-fitting" for Speciale. AR 227. Instead, he contends that Speciale's PRW fits more closely with the construction superintendent description in the DOT (182.167-026). *Id.* Pursuant to this, Linville concludes that Speciale has no transferable skills to sedentary work within his industry, and therefore the ALJ's classification was incorrect. *Id.* at 228.

In considering evidence submitted for the first time to the Appeals Council, such as Linville's report, the Court is to determine whether the ALJ's decision was supported by substantial evidence, in light of the new information provided and the record as a whole. *Brewes v. Astrue*, 682 F.3d 1157, 1162 (9th Cir. 2012). Considering the record as a whole, including the evidence Speciale submitted to the Appeals Council, the Court concludes that the Commissioner's decision is not supported by substantial evidence. The ALJ's disability determination expressly relied on the testimony of the vocational expert, who testified that Speciale's testimony and filed

5

documents indicated two discrete jobs: (1) project manager (DOT 189.117-030), performed at a sedentary exertion level and (2) regional superintendent (DOT 182.167-026), performed at the medium exertion level. *See* AR 18, 42–43. Relying on this testimony, the ALJ concluded that Speciale could perform his PRW as it is actually and generally performed in the national economy, and therefore, he was not disabled. *Id.* at 18. The additional evidence Speciale submitted to the Appeals Council was directly responsive to the VE's testimony, and points out deficiencies in her determination that Speciale's PRW fell into two discrete jobs. Indeed, consideration of Linville's report would create an evidentiary conflict in the record. Defendant does not engage with Linville's report in its papers.

Here, the Court finds that further development of the record, and subsequent consideration thereof, is needed in order to assess whether there is substantial evidence to support the ALJ's decision. Linville's report raises serious questions about whether the testifying VE's opinions are substantiated. Defendant suggests that the ALJ's reliance on the testifying VE's opinions is appropriate given the contradictions in Speciale's descriptions of his PRW. *See* Def.'s MSJ 6. However, it is far from clear whether this is an accurate conclusion because the ALJ failed to reference these contradictions or make a determination of which description governed. Accordingly, the Court remands for further development of the record, and consideration by the agency thereof, consistent with the above.

### ii. Least Demanding Function

Speciale also argues that the ALJ classified his PRW based on duties he performed only 40 percent or less of his typical workday, in violation of *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985), and its progeny, including *Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016). Pl.'s MSJ 9–10.

A claimant has the burden at step four to prove that she cannot perform her past relevant work. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)). An ALJ may use either the "actually performed test" or the "generally performed test" when assessing a claimant's ability to perform past work. *Id.* at 569 (citing SSR 82-61, 1982 WL 31387 (1982)). The Social Security ruling explains the application of the "generally performed test" as follows:

> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61, 1982 WL 31387 (1982). "Regardless of which test is applied at step four, the ALJ may not classify a past occupation 'according to the least demanding function.'" *Stacy*, 825 F.3d at 569 (citing and quoting *Carmickle v. Comm'r Soc. Sec.*, 553 F.3d 1155, 1169 (9th Cir. 2008)). That is, the ALJ errs if he or she equates the "least demanding aspect" of the claimant's past job, which the claimant did less than half of the time, with a fulltime job. *Id.* at 569–70.

Here, as Defendant properly points out, Speciale presented at least two versions of his project manager position. *See* Def.'s MSJ 6. When Speciale applied for benefits, he reported three jobs and listed the same three jobs on his self-authored work report. *See* AR 146, 163–67. Those positions were Regional Manager, Construction Manager, and Regional Construction Manager. AR 163. At issue here is Speciale's work as a Regional Manager, which the VE equated with a project manager job (DOT 189.117-030). AR 42. Speciale contends that the VE misclassified his prior work experience because the administrative duties he performed constituted 40% or less of his typical workday. Pl.'s MSJ 9. However, on his work history report, Speciale declared that the position required him to sit for eight hours per day in order to "manage the day to day operations of a communications installations company from [his] office." AR 166. There was no indication that this position involved physical exertion. At the hearing, by contrast, Speciale referred to this position as "project manager," and testified that on a typical day, he would spend four hours in the office doing clerical work and approximately six hours "on the street." AR 29–30. Speciale also stated that he had incorrectly filled out his work history report. AR 31.

Accordingly, the record reflects that sedentary work comprised either 100% or 40% of Speciale's project manager/regional manager position. *Compare* AR 166, *with id.* at 31; *see also* Def.'s MSJ 9. If sedentary work comprised 100% of Speciale's PRW, Plaintiff could not plausibly contend that the ALJ or the VE misclassified his position by considering only the least demanding function of his job. The same might not be true if sedentary work comprised only 40%

1 of Speciale's PRW.

Because the ALJ did not engage in a discussion of these contradictions, the Court cannot determine whether his determination is based on the least demanding function. For this reason, the Court remands for further development of the record, and consideration by the agency thereof, consistent with the above

### B. Treatment of Claimant's Treating Physicians

Speciale next contends that the ALJ failed to provide a sufficient basis, supported by the record, for rejecting the findings and opinions of his treating physicians, Dr. Darlene Jang and Dr. Ronald Suarez. Pl.'s MSJ 11. Defendant disagrees, however, and argues that the ALJ properly evaluated these opinions in the course of assessing Plaintiff's RFC, and thus, did not err. Def.'s MSJ 12.

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim*, 763 F.3d at 1160. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Id.* (internal quotation marks, citation, and brackets omitted).

If the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion but only based upon "specific and legitimate reasons that are supported by substantial evidence." *Id.* (internal quotation marks and citation omitted). In determining how much weight to give a treating physician's opinion, the ALJ must consider the following factors: the length of the treatment relationship and the frequency of examination by the treating physician, the nature and extent of the treatment relationship between the patient and the treating physician, the supportability of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Id.* (internal quotation marks, citation, and brackets omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Id.*; *see also Bray*, 554 F.3d at 1228 ("[T]he ALJ need not accept the

opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (internal quotation marks, citation and alteration omitted)).

### iii. Dr. Darlene Jang

Dr. Jang, a primary care physician, began seeing Speciale on May 27, 2010. AR 785. In her medical source statement, Dr. Jang wrote that she saw Speciale "once a year." *Id.* Dr. Jang diagnosed Speciale with lumbar radiculopathy, with symptoms that include chronic pain and low back pain that radiates to his right leg. *Id.* Based on his symptoms, Dr. Jang noted that Speciale's functional capacity is limited—he can walk for only one half of a block, sit for five to ten minutes at a time before needing to stand up, and can stand for five to ten minutes before needing to sit down, among other claimed limitations. *Id.* 787.

Although the opinions of treating physicians are generally accorded greater weight than those of reviewing physicians, the ALJ considers other factors in evaluating a medical opinion. 20 C.F.R. § 404.1527(c). Indeed, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r Soc. Sec.*, 359 F3d 1190, 1195 (9th Cir. 2004) (citations omitted). In this case, the ALJ noted that Dr. Jang's report was "not substantiated by the objective and medical findings." AR 17. Specifically, the ALJ wrote,

> the records show significant gaps in treatment. When Mr. Speciale returned for more consistent treatment in March 2012, physical examinations were normal. In general, the claimant is found to be credible with respect to his symptoms; however, there is simply insufficient evidence to support the level of severity alleged. Dr. Jang's statement is similarly unsupported.

AR 18. Accordingly, the ALJ determined that Speciale has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). *Id.* at 15.

The record supports the ALJ's conclusion regarding Dr. Jang. Although Speciale alleges back pain beginning in May 2009 and underwent an L1-2 discectomy for a herniated disc in March 2010, the records show that his symptoms gradually improved after his surgery. Indeed, Speciale did not present for any orthopedic treatment between November 2010 and March 2012. AR 657. Moreover, on March 30, 2012, Dr. Mark Cheng, Speciale's doctor at the Veteran's

9

Administration, noted that Speciale's radiculopathy had resolved and prescribed prescription Icy Hot for residual back pain. *Id.* at 694. His April 2012 exam likewise found normal physical function except for uneven pain in the lumbar region and hip joints. *Id.* at 689. Finally, although a May 2012 PET scan showed degenerative disc disease, Plaintiff did not present for pain treatment again until July 2013. *Id.* at 830–32, 887. Nevertheless, Dr. Jang wrote on May 16, 2013, that Speciale's chronic pain was 6/10. *Id.* at 785. Because the ALJ is the final arbiter with respect to resolving ambiguities in the medical record, *see Andrews*, 53 F.3d at 1039–40, the ALJ reasonably gave less weight to Dr. Jang's opinion.

### iv. Dr. Ronald Suarez

Dr. Suarez is a psychiatrist who began seeing Speciale in May 2013. AR 1027. He completed a mental impairment questionnaire for Speciale on May 28, 2014. *Id.* at 1027–32. Dr. Suarez diagnosed Speciale with a mood disorder, and stated that Speciale suffers from anhedonia, intense and unstable interpersonal relationships, persistent disturbances of mood or affect, and generalized persistent anxiety, among other symptoms. AR 1028.

As the Court explained above, although the opinions of treating physicians are generally accorded greater weight than those of reviewing physicians, the ALJ considers other factors in evaluating a medical opinion. 20 C.F.R. § 404.1527(c). Here, the ALJ considered Dr. Suarez's findings, but discounted them after finding contradictions in the record. AR 17. The ALJ noted that although Dr. Suarez reported "no more than moderate limitations in the functional areas," Dr. Suarez concluded that Speciale "is so marginally adjusted that even a minimal increase in mental demands or change in environment would be predicted to cause him to decompensate." *Id.* The ALJ discounted this conclusion because Dr. Suarez's notes throughout the relevant period "do not document such extreme severity." Moreover, the ALJ found that Speciale's mental treatment has been "sporadic," and "[w]hen he did present for an evaluation, Dr. Suarez noted generally normal mental status evaluations." *Id.*

A contradiction between a medical source's assessment of a claimant's disability and the source's other notes and observations provides a clear and convincing reason for rejecting that source's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ identified a number

10

of contradictions between Dr. Suarez's ultimate conclusion and Speciale's other medical records. For example, on April 24, 2014, only one month before Dr. Suarez completed the aforementioned questionnaire, Dr. Suarez noted that Speciale mood was "ok," and that Speciale was "not overtly anxious, dysphoric, elevated or irritable." AR 1000, 1003. He also found Speciale "alert and oriented," cooperative with good eye contact, organized thought process, intact attention and concentration, and fair insight and judgment. *Id.* at 1003. Additionally, at an earlier appointment in November 2013, Dr. Suarez's notes were nearly identical, but also included the comment that Speciale's ongoing symptoms had decreased as "he tries to take more of a perspective of acceptance about his circumstances and limitations." *Id.* at 1010, 1013. In previous mental health exams, Speciale denied depression and stated that his mood was "pretty good." *Id.* at 346 (May 16, 2012), 363 (March 28, 2012). These records contradict Dr. Suarez's opinion that Speciale would decompensate upon entering the public sphere. In light of the contradictions, the Court finds that the ALJ's rejection of Dr. Suarez's opinion is supported by more than substantial evidence and was based upon a permissible determination within the ALJ's province.

### C. No Severe Mental-Health Impairment

Speciale next argues that the ALJ erred by failing to properly consider the demonstrated diagnoses of depressive disorder and medication side effects, and thus found that the only "severe" impairment he had demonstrated was "degenerative disc disease." Pl.'s MSJ 13.

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citation omitted). "The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is 'not severe.' According to the Commissioner's regulations, 'an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.'" *Id.* at 1290 (citing and quoting 20 C.F.R. §§ 404.1520(c), 404.1521(a) (1991)). At step two, "the ALJ must consider the combined effect of all of the claimant's impairments on [his or] her ability to function, without regard to whether each alone was sufficiently severe . . . . Also, [the ALJ] is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining

severity." *Id.* (citations omitted). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims . . . . An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals' ability to work.'" *Id.* (citations omitted). The claimant bears the burden of making a threshold showing of medical severity. *Bowen v. Yuckert*, 482 U.S. 137, 149–50 (1987).

Here, the ALJ found Speciale had a severe impairment, namely "degenerative disc disease." AR 13. Although Speciale objects the ALJ failed to consider his functioning levels with respect to his memory loss, concentration deficits, and sleep disturbance (Pl.'s MSJ 14), the fact that Speciale had at least one severe impairment meant the ALJ had to consider the functional effect of all of Speciale's impairments, severe and non-severe. *See* SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"); SSR 85-28, 1985 WL 56856, at *3 (January 1, 1985) ("A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process"). Therefore, the identification of his mental impairments as severe or non-severe was irrelevant, so long as the ALJ considered all impairments as part of the sequential analysis, which he did. *See, e.g.*, AR 17.

Further, "omissions at step two are often harmless error if step two is decided in plaintiff's favor." *Nicholson v. Colvin*, 106 F. Supp. 3d 1190, 1195 (D. Or. 2015) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding that any error the ALJ committed at step two was harmless because it did not alter the outcome of step two, and the step was resolved in claimant's favor); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where the ALJ fully evaluated the impairment at step four); *Smolen*, 80 F.3d at 1290 (if one severe impairment exists, all medically determinable impairments, and their combined impact on the claimant's RFC and ability to perform work, must

12

be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523)). Step two serves only to eliminate groundless claims of disability from claimants who have no impairments or combination of impairments that sufficiently limit their functionality to constitute severe impairments. *Smolen*, 80 F.3d at 1290 ("the step-two inquiry is a de minimis screening device to dispose of groundless claims"). Thus, as the ALJ found that Plaintiff had one severe impairment and completed the sequential analysis, considering all of Plaintiff's severe and non-severe impairments, any error in failing to name additional mental impairments as severe is harmless. *See generally* AR 11–18; see *Tommasetti v. Astrue*, 533 F.3d 1035, 1042–43 (9th Cir. 2008) (error that is inconsequential to the ultimate non-disability determination is harmless error) (citations and internal quotation marks omitted); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Accordingly, the ALJ's decision is not to be disturbed on this ground.

### D. Evaluation of VA Disability Rating

Speciale's final argument is that the ALJ erred by failing to consider the VA rating determination. Pl.'s MSJ 15; *see* AR 131–32. Defendant appears to concede that the ALJ did not consider the VA's finding in reaching his decision. Def.'s MSJ 16. Nevertheless, Defendant argues that this omission was harmless because the ALJ considered both the VA physical and medical source opinions at length in his opinion. *Id.* The VA found Speciale 70 percent disabled, 50 percent of which came from his alleged mental impairment. AR 132.

"Although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision, and the ALJ must ordinarily give great weight to a VA determination of disability." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). "Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

Contrary to what Defendant argues, although the ALJ did consider the opinions of Speciale's doctors at the VA, he did not provide a reason for rejecting the VA's disability

13

determination. AR 16. In light of clear Ninth Circuit precedent, this is plainly insufficient. *Cf. Allen v. Astrue*, No. CV 11-2807, 2012 WL 234629, at *3–4 (C.D. Cal. Jan. 23, 2012) (ALJ's statement that she was not bound by the VA's disability finding is not a persuasive, specific, and valid reason for rejecting the VA's finding of disability). Defendant's reliance on *Cahudhry v. Astrue*, 688 F.3d 661 (9th Cir. 2012), is misplaced because there, "the ALJ directly addressed the [VA's finding of disability] in the record." 688 F.3d at 669; *see see* Def.'s MSJ 16. Here, by contrast, the ALJ did not mention the VA's disability rating once. *Cf. Hanes v. Colvin*, No. 13cv2625, 2015 WL 5177763, at*3 (S.D. Cal. Mar. 16, 2015) (finding *Chaudhry* distinguishable because, in *Chaudhry*, "the issue was whether the ALJ committed reversible error by not obtaining Chaudhry's disability determination from the VA," whereas in the present case "the ALJ failed to consider the VA determination of disability in his decision").

Thus, the Court cannot agree that the ALJ's failure to consider the VA's disability rating was harmless error. Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting the determination of the VA, if the ALJ determines that rejection is warranted.

### E.     Remand is Warranted

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod*, 640 F.3d at 888.

Since the ALJ possibly misclassified Speciale's past relevant work and failed to address the Department of Veterans Affairs' disability determination, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within

14

the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted). Accordingly, the Court will remand this action to the agency for further consideration

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner is reversed, and the matter is remanded for further proceedings. On remand, the ALJ should make sure the record is fully developed according to this Court's ruling.

Dated: April 28, 2017

BETH LABSON FREEMAN
United States District Judge